WATSON (HIGGINS v.). See Case No. 6,470.

## Case No. 17,284.

### WATSON et al. v. INSURANCE CO. OF NORTH AMERICA.

[2 Wash. C. C. 152.] [2]

Circuit Court, D. Pennsylvania. April Term, 1808.

MARINE INSURANCE—SURVEY OF VESSEL—EFFECT OF CONDEMNATION.

1. The report of a survey, made upon an examination of a vessel for the purpose of ascertaining her situation after a disaster in a foreign port, is not evidence of the facts stated in it; but only that such survey was made.

2. The condemnation of a vessel, upon a report of the surveyors, that many of her timbers were unsound and rotten, and that in her strained and shattered condition, and from the want of proper docks at the place for repairing her, her repairs would cost more than she was worth, is not a condemnation which will excuse the underwriters from liability under the clause in the policy, which declares, that if the vessel should be condemned, as unsound or rotten, the underwriters should not be liable.

Action [by Watson & Hudson] on two policies, one on the Anna Maria, at and from Cadiz

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

to Antwerp, valued at 12,000 dollars; and the other on the freight of said vessel, on the same voyage, valued at 6,000 dollars. Shortly after leaving Cadiz, the vessel met with many gales, which caused her to strain, and make much water; and after consulting the officers, and with the advice of the ship-carpenter, she put back, and got to Gibraltar, where, still experiencing bad weather, she stranded. The captain petitioned the admiralty court at Gibraltar for a survey, which was had; and the report was, that upon examination, many of her timbers, which are particularly mentioned, were found to be unsound and rotten; and that in the shattered and strained situation of the vessel, and the want of proper docks there for repairing her, the repairs would cost more than the vessel was worth; and therefore they recommended that she should be sold. On this report, the captain petitioned the court, that a sale should be ordered for the reasons mentioned in the report. The order was accordingly given, and the vessel was sold.

The question of fact turned upon the seaworthiness of the vessel, when the risk commenced; and testimony was given, with a view to prove that she was strong, staunch, and sound, when she sailed from New-York for Cadiz. Upon this point, the question was, whether the report of the surveyor was evidence of the facts contained in it, or only evidence that a survey was made, and an order of sale awarded: and to prove that the report is evidence of the facts stated in it, Mr. Rawle, for plaintiff, read Park, 400.

·BY THE COURT. The report is not evidence of the facts stated in it; but only that a survey took place.

The point of law raised, by Ingersoll & Hopkinson, for defendants, was, that under that clause in the policy, which declares, that if the vessel should be condemned as unsound, or rotten, the underwriters should not be liable, this condemnation was conclusive upon the parties; and on this ground, they moved for a nonsuit.

Mr. Rawle, for plaintiff, relied upon the case of Wilson v. Marine Ins. Co. of Alexandria, 3 Cranch [7 U. S.] 187; and the unreasonableness of the construction contended for by the defendants' counsel.

WASHINGTON, Circuit Justice. We can only understand the meaning of contracts, by the language which the parties have used; and that must govern the construction, unless decisions have been made, by which a fixed meaning has been given to these expressions. In this case, no adjudication, to our knowledge, has ever been given on this clause. The case from 3 Cranch [supra] is altogether unlike it; for although the same clause was resorted to in the policy in that case, still no opinion was given as to its construction. The plea was, that the vessel was not seaworthy at the time the risk commenced; and the defendants offered the report of the surveyors, which did not declare the vessel to be un-

sound or rotten, as evidence that she was not seaworthy when she sailed. The supreme court were of opinion that the report, referring to the time when the survey was made, was not evidence of the vessel not being seaworthy when the risk commenced; but no question arose, or in that case could arise, as to the conclusiveness of the condemnation. In this case, the question is not confined, by the pleadings, to the want of seaworthiness when the risk commenced, but whether she was condemned as being unsound or rotten. Had she been condemned for this cause, it would have been conclusive under this clause of the policy, which is too plainly and unambiguously worded, to admit of two interpretations. But, in this case, the surveyors do not report that the vessel was unsound or rotten; but they state, that some of her timbers were so, and in consequence of her strained and shattered situation, and the difficulty of repairing her, they advise a sale, and the sale is ordered for these reasons; but not because the vessel was rotten, for no such fact is reported. There seems to be good reason for the parties really meaning what the expressions in this clause so clearly import. The vessel may be condemned for a variety of reasons, which imply nothing against the want of seaworthiness when the risk commenced; as for injuries sustained by stress of weather, or from other causes, on the voyage. In this case, therefore, the condemnation is to have no effect. But if she be condemned, as being unsound or rotten, this can so seldom occur, unless she was so when she sailed, that the parties are willing to consider this circumstance, if established by a regular survey and condemnation, as evidence of the fact of want of seaworthiness when she sailed, without going into other proof, which it is always difficult to procure. Very long voyages may furnish an exception to this reasoning; but in general it is a good one, and the parties adopt it.

[For proceedings on a subsequent trial, see Cases Nos. 17,285 and 17,286.]